IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**LORENZO HALL, #B-64594,**    )
                               )
       **Plaintiff,**         )
                               )
vs.                            )   CASE NO. 10-cv-703-JPG
                               )
**CHAPLAIN LOVE, C/O FITCH,** *et al.*,  )
                               )
       **Defendants.**        )

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Lorenzo Hall, an inmate in Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.*, based on an incident that occurred while Plaintiff was housed at Lawrence Correctional Center. Plaintiff is serving a 22 year sentence for attempted murder. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief
>     may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from
>     such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint, the Court finds it appropriate to exercise its authority under Section 1915A; portions of this action are subject to summary dismissal.

## The Complaint

Initially, the Court notes that on October 22, 2010, Plaintiff filed a letter (Doc. 4) seeking to correct or supplement his complaint because there was an error in the list of named Defendants. The court finds it convenient to treat this letter as a Motion for Leave to Amend Plaintiff's Complaint, and grants Plaintiff's request. Plaintiff inadvertently omitted the name of Defendant C/O Fitch from his caption, although he did make specific allegations against this Defendant in the body of his complaint and included him among the itemized list of Defendants. The Clerk shall be directed to add C/O Fitch as a named Defendant.

Plaintiff, a Muslim, alleges that during the month of Ramadan in 2008, he was not allowed to participate in several of the nightly group prayer services due to a belief on the part of Defendant Fitch that he had broken his fast. Plaintiff missed out on this important religious observance for approximately 12 days. He personally requested Defendant Chaplain Love to allow him back in to the nightly services; this request was denied. He promptly filed grievances each day he was barred from participation in Ramadan services; these were ultimately denied by the Administrative Review Board (ARB) on May 28, 2009.

While Plaintiff's Ramadan grievances were still pending, he was removed on December 12, 2008, from the list of inmates permitted to participate in weekly Friday Jummah (or Jumu'ah)[1] congregational services. Plaintiff filed another grievance. He claims that Defendant Love (the prison chaplain) instigated his removal in retaliation for Plaintiff having complained about Defendant Love in the Ramadan grievances. As a result, Plaintiff was not able to participate in the weekly congregational Jumu'ah services for over two months until he was placed back on the participant list in February, 2009. Plaintiff's grievance was denied; he appealed the denial, but his appeal was rejected by the ARB for not being filed within 30 days. However, Plaintiff points out that he signed the appeal form and submitted it through inmate mail two days before the deadline.

Plaintiff seeks a jury trial; combined compensatory and punitive damages of $20,000 for the exclusion from Ramadan services and $15,000 for the exclusion from weekly Jumu'ah services; a declaratory judgment that Defendants violated his constitutional rights; and a

---

[1] Plaintiff's spelling is "Jummah;" the Court will adopt the spelling "Jumu'ah" used in *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 343 (1987).

preliminary and permanent injunction ordering the Defendants to timely follow their grievance procedures.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into four (4) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 - Denial of Participation in Ramadan Religious Services**

On September 15, 2008, Plaintiff was leaving a class when he was told by two Correctional Officers (C/O's) to follow other inmates to the lunch room, despite the fact Plaintiff was fasting in observance of Ramadan. Plaintiff followed orders and went to the lunch room but did not take a tray or eat, and sat in the front of the room where he could be observed by C/O's. He then returned to his housing unit, where he was questioned by Defendant C/O Fitch on why he went to lunch when he was supposed to be fasting. Plaintiff explained he had followed orders to go to the lunch room, but did not take a food tray or eat and was still fasting.

The following evening, September 16, Plaintiff was not called with the other Muslim inmates to go to the Ramadan prayer service. He contends that Defendant Fitch intentionally provided false information (that Plaintiff broke his fast) which led to Plaintiff's exclusion. Plaintiff immediately questioned the shift commander, who allowed Plaintiff to go to services the night of September 16 despite not being on the participant list. While in the chapel for the service, Plaintiff placed a note under Defendant Chaplain Love's door requesting his name be put back on the list to be called to the next Ramadan service.

The same sequence of events occurred for the next three evenings (Sept. 17-19, 2008). Plaintiff attended services on those nights, and sent several written requests to Defendant Chaplain Love, as well as Defendants Boyd (Assistant Warden), and Ryker (Warden), asking to be put back on the Ramadan participation list as he was still fasting and had no food in his cell. In addition, during the Friday Jumu'ah Service on September 19, Plaintiff spoke directly to Defendant Love about the problem. Plaintiff claims Defendant Love became belligerent, cursed at Plaintiff, and ordered Plaintiff out of his office.

On September 20, 2008, another C/O not named as a defendant refused to allow Plaintiff to attend the evening Ramadan service or to receive a special food tray for fasting inmates, because Plaintiff's name had not been restored to the participant list. Beginning that evening, Plaintiff was barred from attending the remaining 12 days of Ramadan services. In addition, Plaintiff's exclusion from the Ramadan observation meant that he was denied nightly food trays while he continued to fast during the day, which he states deprived him of adequate nutrition for the final twelve days of Ramadan. Plaintiff filed grievances for each day he was not allowed to participate in the Ramadan observances.

It is well-established that "a prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir. 1990); *see Al-Alamin v. Gramley,* 926 F.2d 680, 686 & nn.3-5 (7th Cir. 1991) (collecting cases). On the other hand, a prison's action that substantially burdens an inmate's religious exercise may nevertheless be valid if the "defendant's procedures and conduct were 'in furtherance of a compelling government interest' and 'the least restrictive means of furthering that compelling government interest'[.]" *Nelson v. Miller*, 570 F.3d 868, 880 (7th Cir. 2009)

(citing *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 719 (1981); 42 U.S.C. 2000cc-1(a)(1) & (2); *Koger v. Bryan*, 523 F.3d 789, 800 (7th Cir. 2008)). Such compelling interests include inmate security and the proper allocation of limited prison resources. *See O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 352-53 (1987); *Turner v. Safley,* 482 U.S. 78, 89-90 (1987); *Al-Alamin,* 926 F.2d at 686.

Plaintiff's central allegations under Count 1 assert that Defendants Fitch and Love unconstitutionally barred him from participation in the nightly Ramadan services for no valid reason, while other Muslim inmates were allowed to continue their attendance at these ongoing congregate services. Accordingly, the Court is unable to dismiss Plaintiff's claim against Defendants Fitch and Love.

In addition, Plaintiff accuses Defendant Ryker of "intentionally issuing a policy during Ramadan 2008 that imposed a substantial burden on the Plaintiff's ability to observe his Islamic tenets . . . ." (Doc. 1, p. 19) Plaintiff does not describe what policy he is referring to. A mere conclusory statement is not sufficient to state a claim. *Brooks v. Ross*, 578 F.3d at 581. Therefore, the claim in Count 1 against Defendant Ryker is dismissed without prejudice. Plaintiff shall be allowed an opportunity to amend his complaint should he wish to pursue his claim against this Defendant.

Plaintiff makes no allegations against Defendant Boyd that amount to a constitutional claim (see discussion under Count 4), thus he shall be dismissed from Count 1 with prejudice.

**Counts 2 and 3 - Retaliation and Exclusion from Weekly Jumu'ah Religious Service**

Plaintiff states that during the Jumu'ah service on December 4, 2008, Defendant Love interrupted the sermon and asked to see Plaintiff's I.D. Card. Plaintiff was seated in a chair due

to an ongoing medical condition, not on the floor as is customary during Jumu'ah service. Defendant Love told Plaintiff that if he chose to sit in a chair instead of on the floor "like a real Muslim," Plaintiff would be taken back to his housing unit, and it was Plaintiff's choice. When the time came for the next Jumu'ah service on December 12, 2008, Plaintiff's name was not on the list of participants. Plaintiff filed a grievance, noting that his medical condition could be verified by the Health Care staff, that it is not mandatory for Muslims to sit on the floor during Jumu'ah, and asserting his belief that Defendant Love was retaliating against Plaintiff for filing and pursuing his Ramadan grievances which still had not been resolved.

Plaintiff was excluded from Jumu'ah services from December 12, 2008, through approximately February 26, 2009, when his grievance was returned by a counselor. The grievance response alluded to a "disciplinary issue" being the reason for Plaintiff's removal from Jumu'ah services. However, Plaintiff denies this and claims no disciplinary report was ever made on him, and asserts there was no valid reason for his exclusion.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the action taken by the prisoner and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.*

Plaintiff has adequately stated a retaliation claim against Defendant Love, for barring

Plaintiff from Jumu'ah services because Plaintiff pursued his Ramadan grievances against this Defendant. The retaliation claim shall be designated as Count 2. In addition, under the authority outlined in Count 1 above, Plaintiff may pursue a claim against Defendant Love for unconstitutional exclusion from Jumu'ah services, whether or not Plaintiff can prove that this exclusion was retaliatory. The exclusion claim shall be designated as Count 3.

**Count 4 - Due Process - Denial of Grievances**

Finally, Plaintiff complains that Defendants Ryker, Boyd and Walker either failed to respond to Plaintiff's request slips, failed to grant Plaintiff the relief sought in his grievances or concurred with another Defendant's denial of relief. Defendant Fairchild refused to hear Plaintiff's appeal of the Jumu'ah grievance on the basis that it was submitted more than 30 days past the date of denial by the warden.

There is no denial of due process where a prisoner has access to a grievance procedure and obtains review, as Plaintiff did here. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). Moreover, Plaintiff has no constitutional right to have his grievance resolved in his favor. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (plaintiff's argument that conspiracy by prison officials to deny administrative review of his grievances by dismissing them was frivolous where plaintiff had access to the grievance procedure but he did not obtain the outcome he desired).

Even though Plaintiff raises a legitimate argument that under the "mailbox rule" he timely appealed the denial of his grievance to the ARB when he placed it in the mail within the 30-day deadline, Defendant Fairchild's refusal to hear the appeal does not give rise to a due process violation.

In addition, a Defendant's approval of the denial of a grievance by a subordinate does not give rise to liability, nor does the failure to remedy a problem necessarily state a claim. Plaintiff, like many other inmates, seems to think that any prison employee who knows (or should know) about his problems has a duty to fix those problems. That theory is in direct conflict with the well-established rule that "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). *See also Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions). As Chief Judge Easterbrook has stated,

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor . . . and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to [results] That can't be right. *See Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993).

*Burks*, 555 F.3d at 595.

Accordingly, Count 4 against Defendants Ryker, Boyd, Walker and Fairchild must be

dismissed with prejudice.

**Disposition**

The Clerk is **DIRECTED** to add **C/O FITCH** as a named Defendant.

**IT IS HEREBY ORDERED** that **COUNT 4** fails to state a claim upon which relief may be granted, and thus is **DISMISSED** with prejudice. Defendants **BOYD, WALKER** and **FAIRCHILD** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that **DEFENDANT RYKER** is dismissed from this action without prejudice. Should Plaintiff wish to pursue the claim designated as Count 1 against Defendant Ryker, Plaintiff shall file his First Amended Complaint, stating the basis for holding Defendant Ryker liable for any deprivation of Plaintiff's rights in Count 1, and including all counts not dismissed in this order, within 35 days of the entry of this order (on or before May 11, 2011). Failure to timely file the First Amended Complaint may result in the dismissal of Defendant Ryker becoming a dismissal with prejudice. See Federal Rule of Civil Procedure 41(b). Upon filing of the First Amended Complaint, this Court shall screen the claim against Defendant Ryker pursuant to Section 1915A.

Further, the Plaintiff is advised that any other proposed amendments or supplements to his complaint must be properly filed pursuant to Federal Rule of Civil Procedure 15(a) or (d). In addition, pursuant to Southern District of Illinois Local Rule 15.1, the proposed amendment to a pleading or amended pleading itself must be submitted at the time the motion to amend is filed. The Court will not accept piecemeal amendments to the original complaint. Furthermore, an amended complaint (together with any exhibits) must stand on its own, as it supersedes and replaces the original complaint. *See Flannery v. Recording Indus. Assoc. of Am.,* 354 F.3d 632,

638 n.1 (7th Cir. 2004).

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **LOVE** and **FITCH:** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the

Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Philip M. Frazier for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Philip M. Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   April 4, 2011**

    *s/J. Phil Gilbert*
**United States District Judge**