IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LORENZO HALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: **3:10-cv-00703-JPG-PMF** |
| | ) |
| CHAPLAIN LOVE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is the defendants' (Doc. 26) motion for summary judgment and the plaintiff's (Doc. 29) response thereto. For the following reasons, it is recommended that the (Doc. 26) motion for summary judgment be denied.

### I.   FACTS

The plaintiff, Lorenzo Hall, was an inmate during all times relevant to this lawsuit at Lawrence Correctional Center ("Lawrence"), a state prison located in Sumner, Illinois, under the control of the Illinois Department of Corrections ("IDOC"). Hall is a practicing Muslim and was participating in an alternative diet plan (fasting) at Lawrence in observance of the Muslim religious holiday of Ramadan. In 2008, Ramadan began on September 1 and ended on October 2. According IDOC regulations, inmates may take part in an alternative diet plan, if they inform the IDOC of their intent to take part in a religious holiday requiring an alternative diet at least 45

1

days in advance.[1]  If an inmate fails to follow an alternative plan, however, he or she may no longer receive the alternative diet plan.[2]

On September 8, 2008, Hall was returning from an art class at Lawrence when he was not allowed to return to his unit.  Rather, he was ordered by a correctional officer ("C/O") to enter the chow hall with the rest of the inmates returning from the art class.  Hall asserts that he did not take a food tray.  He sat at a table without a food tray and within the view of Lieutenant Kuntz.  He exited the chow hall sometime later and returned to his unit where he encountered C/O Fitch, who questioned Hall about his whereabouts.  The discussion became argumentative.  Hall informed C/O Fitch that he was not allowed to return directly to his unit, was ordered to enter the chow hall, and did not eat.  C/O Fitch accused Hall of sacrificing his religion "for a hamburger and fries."[3]  Later that day, C/O Fitch wrote an incident report in which he reported the following information to Lt. Ryker and Chaplain Love:

> [At approximately 11:25 a.m. on September 8, 2008], this C/O assigned to R6 [illegible] wing observed [inmate] Hall return with the academic chow line. [Inmate] Hall is scheduled to attend Ramadan Fast per OTS 169. [Inmates] who are assigned to attend Ramadan Fast are not allowed in Dietary.  This C/O checked with Academic officer C/O Wheeler, Movement officer C/O Dixon, and South Dining Room Officer C/O Christian, and at no time did he inform them that he was not to go to Dietary.  C/O Christian stated no Inmates refused trays on that line. [Illegible] Lt. notified.[4]

On September 16, Hall's cell wasn't called for Ramadan service.  This continued for a couple more days (September 17-18), although he was allowed by Lawrence staff to actually

---

[1] *See* 20 Ill.Admin.Code § 425.70

[2] *See id*.

[3] Doc. 29-3 at 15.

[4] Doc. 27-1 at 1.

participate in Ramadan services on both days due to recognition of his prior participation. On September 18, Hall authored an institutional grievance complaining that he was taken off the Ramadan participation list. By this time, Hall had learned from more than one Lawrence C/O that Chaplain Love had taken him off the Ramadan participation list because he had been seen leaving the chow hall. Removal from the Ramadan participation list meant that Hall would not continue to receive an alternative diet and would not be able to attend group prayer services, as well as other Ramadan-related religious services offered at Lawrence.

After learning of his removal from the Ramadan participation list, Hall went to speak to Chaplain Love in person after several request slips asking to be placed back on the list went unanswered. The discussion became heated. Chaplain Love accused Hall of lying and informed him that he would not be placed back on the participation list because C/O Fitch told him the truth and C/O Fitch "was a real Christian."[5] Hall was not placed back on the Ramadan participation list for the remainder of Ramadan. September 20 was the last day Hall was allowed to participate in religious services related to Ramadan at Lawrence.

Hall continued to participate in regularly-scheduled Friday Jumu'ah services, a prayer service offered at Lawrence for Muslims, after the cessation of Ramadan in 2008. On December 5, 2008, Hall and approximately ten other inmates were sitting in a line of chairs during Jumu'ah services while other inmates were positioned on the floor. Chaplain Love stopped the service and told the Muslims positioned in chairs, including Hall, that if they didn't want to sit on the floor "like real Muslims," they can go back their housing unit. Chaplain Love then directed the Muslims positioned in chairs to give to their identification cards to a C/O. The following Friday (December 12) Hall was informed that his name was not on the Jumu'ah services list. Hall wrote

---

[5] Doc. 29-3 at 24.

another institutional grievance that day informing the prison that he doesn't sit on the floor for dietary and medical reasons. Hall was not allowed to attend the regularly-scheduled Friday Jumu'ah services at Lawrence again until approximately February 20, 2009.

## II.  PROCEDURAL HISTORY

The plaintiff, Lorenzo Hall, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 ("§ 1983") on September 13, 2010 against six defendant prison officials employed by IDOC. *See* Doc. 1. On April 6, 2011, the Court screened the complaint pursuant to its authority provided by 28 U.S.C. § 1915A and summarily dismissed four defendants and one claim from this case. *See* Doc. 6. The Court found that Hall stated three claims as follows:

1) Count 1: unconstitutional exclusion from participation in religious services relating to Ramadan at Lawrence from September 16-20, 2008 and a period of 12 days thereafter in violation of the Free Exercise Clause of the First Amendment of the U.S. Constitution (made applicable to the states by the Fourteenth Amendment) against defendants Fitch and Love;[6]

2) Count 2: unconstitutional retaliation by way of exclusion from religious services (Jumu'ah services) at Lawrence for filing grievances (protected activity under the First Amendment) at Lawrence from December 12, 2008 through approximately February 26, 2009 in violation of the First Amendment against defendant Love; and

3) Count 3: unconstitutional exclusion from participation in religious services in violation of the Free Exercise Clause of the First Amendment against defendant Love for the same alleged conduct in Count 2.

---

[6] It is important to note that the remaining defendants were sued in their individual capacities for damages. *See* Doc. 1 at 18, 21. The plaintiff refers to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*, in his (Doc. 29) response to the instant motion for summary judgment. However, there are no RLUIPA claims in this lawsuit because RLUIPA "does not create a cause of action against state employees in their personal capacity." *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) (citing *Nelson v. Miller*, 570 F.3d 868, 886–89 (7th Cir. 2009)). RLUIPA is further inapplicable because the plaintiff only sought injunctive relief against defendants Fairchild and Walker (*see* Doc. 1 at 21), and those defendants have already been dismissed from this lawsuit (*see* Doc. 18). *See Grayson*, 666 F.3d at 451.

4

*See id*.  The remaining defendants filed the instant (Doc. 26) motion for summary judgment on April 5, 2012.

### III.    DISCUSSION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396.

### A.  Counts 1 and 3: Unconstitutional Exclusion from Religious Services

Hall is proceeding in this case pursuant to § 1983.  "To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citing *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994)).  In order to be personally involved, a plaintiff must demonstrate that the defendant knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id*. (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)); *see also Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006) (citing *Vance v. Peters*, 97 F.3d 987, 994 (7th Cir. 1996)); *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) ("To be personally responsible, an official must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye.") (citations omitted).

*1. Defendant Fitch*

Defendant Fitch argues that he was not personally responsible for Hall's exclusion from Ramadan services in 2008, and therefore, cannot be held liable pursuant to § 1983 for the exclusion in Count 1. *See* Doc. 27 at 5-6. Defendant Fitch is not a named defendant with respect to Counts 2 and 3. *See* Doc. 6. The parties agree that defendant Fitch wrote an incident report on September 8, 2008 reporting that Hall was seen leaving the prison Dietary department ("Dietary") when he was supposed to be fasting for Ramadan. Defendant Fitch asserts that he was not personally involved in the resulting exclusion from religious services, as required for § 1983 liability, because defendant Fitch did not personally make the decision to remove Hall from the Ramadan participation list. *See* Doc. 27 at 6. Rather, it was the Chaplain that made the decision. *See id*.

The gist of Hall's argument regarding personal involvement seems to be that defendant Fitch's actions with regard to the incident report were not only deliberate, but also pre-textual. Hall submits evidence in the form of his own affidavit and his deposition. *See* Docs. 29 at 18; 29-3. Hall states in his deposition that defendant Fitch provided false information in his incident report that lead to his exclusion from Ramadan services. *See* Doc. 29-3 at 13. Defendant Fitch copied the Chaplain on his incident report. *See* Doc. 27-1 at 1. Hall's deposition describes an encounter preceding the incident report where defendant Fitch refused to listen to Hall's reason for entering Dietary, became argumentative, and accused Hall of sacrificing his religion "for a hamburger and fries." *See* Doc. 29-3 at 15. The Court cannot assess the credibility of Hall's statements at this time. *See Anderson,* 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are [trier of fact]

6

functions, not [rulings of law], whether [the judge] is ruling on a motion for summary judgment or for a directed verdict").

While it is true that defendant Fitch did not, himself, exclude Hall from Ramadan participation, the evidence regarding personal involvement, viewed in a light most favorably to Hall, could lead a reasonable juror to conclude that defendant Fitch not only deliberately failed to prevent the unconstitutional exclusion from religious services, but intentionally facilitated it. *See Knight*, 590 F.3d at 463. The purported disparaging remarks defendant Fitch made regarding Hall's lack of devotion to his faith and the copying of the Chaplain on the incident report create a possible inference that defendant Fitch acted with the intention of having Hall removed from participation in the Ramadan services provided at Lawrence. Accordingly, a genuine issue of material fact exists on the personal involvement issue and judgment as a matter of law for defendant Fitch on Count 1 is not appropriate at this time.

### 2. *Defendant Love*

As summarized above, Counts 1 and 3 allege unconstitutional exclusion from religious services in violation of the Free Exercise Clause of the First Amendment pursuant to § 1983. "Section 1983 First Amendment, RLUIPA and IRFRA claims all use the substantial burden test to determine whether a violation of a plaintiff's religious free exercise rights has occurred." *Nelson v. Miller*, 570 F.3d 868, 877 (7th Cir. 2009); *see also Koger v. Bryan*, 523 F.3d 789, 802-803 (7th Cir. 2008) (citing *Thomas v. Review Bd.*, 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); *Hernandez v. Comm'n of Internal Revenue*, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989)). While failing to cite or argue the substantial burden standard in his brief, defendant Love argues that he is entitled to summary judgment on Counts 1 and 3 because the IDOC has a legitimate penological interest in removing inmates from Ramadan participation if

they break their fast. *See* Doc. 27 at 6-10.  Much of defendant Love's argument on Counts 1 and 3 contemplate whether several IDOC regulations regarding the institutional practice of religion are reasonably related to legitimate penological interests when applying the "reasonableness" standard set forth by the U.S. Supreme Court in *Turner v. Safley,* 482 U.S. 78 (1987).  However, Hall's complaint does not facially challenge any regulation promulgated by IDOC regarding the practice of religion.[7] *See* Doc. 1.  The proper standard in which to apply defendant Love's actions with respect to Counts 1 and 3 is the substantial burden test.[8] *See Nelson*, 570 F.3d at 877.  Because defendant Love has not made his argument under the substantial burden test, granting summary judgment for defendant Love on Counts 1 and 3 would not be appropriate.

### B. Count 2: First Amendment Retaliation

In order to prevail on a First Amendment retaliation claim, a plaintiff must prove that (1) he or she engaged in activity protected by the First Amendment; (2) the protected activity was a but-for cause of the defendant's action; and (3) he or she suffered a deprivation because of the defendant's action. *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) (citing

---

[7] Perhaps it is the contention of defendant Love that Hall has challenged the validity of 20 Ill.Admin.Code § 425.70, regarding accommodation of religious diets.  Subsection (e) of that regulation provides that a "who does not adhere to the alternative diet shall no longer receive the alternative diet." *See* 20 Ill.Admin.Code § 425.70.  The Court does not believe such a challenge exists in this lawsuit.  Even if it did, defendant Love's argument would not be completely applicable because the facts in this case demonstrate that Hall was completely removed from all facets of Ramadan participation offered by Lawrence, not just removed from an alternative diet plan.

[8] Another implication from defendant Love's argument could be that Hall was not substantially burdened by the removal from the Ramadan participation list.  Defendant Love states in his brief more than once that, despite being removed from Ramadan participation services at Lawrence, Hall still had access to his prayer rug, the Koran, and a religious medallion. *See* Doc. 27 at 10, 11.  It is also pointed out that Hall could also pray in his cell five times a day. *See id*. at 10.  However, Hall has come forward with his own sworn evidence indicating that exclusion from the services constituted a significant burden.  At the very least, an issue of fact exists for trial on this issue.

*Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 501 (7th Cir. 2010)). The parties do not argue about whether Hall participated in protected First Amendment activity or whether Hall suffered a deprivation because of the defendant's actions. Rather, defendant Love argues that he is entitled to summary judgment on Count 2 because Hall cannot show his grievances and complaints were a "but-for" cause of the defendant Love's actions. Under the "but-for" causation test, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that [an illegal purpose] was the "but-for" cause of the [defendant's adverse action]." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177-78, 129 S.Ct. 2343, 2351 (2009); *see also Kodish*, 604 F.3d at 501 (following the *Gross v. FBL Fin. Serv., Inc.* case); *Fairley v. Andrews*, 578 F.3d 518, 525–26 (7th Cir. 2009).[9]

In the Seventh Circuit, "the causation analysis for a § 1983 retaliation claim tracks the causation analysis for a Title VII retaliation claim." *Spiegla v. Hull*, 371 F.3d 928, 943 n.10 (7th Cir. 2004) (quoting *Johnson v. Univ. of Wis.-Eau Claire*, 70 F.3d 469, 482 (7th Cir. 1995). "A plaintiff in a Title VII case may offer either direct proof of sex-based discrimination or retaliation, or may use the burden-shifting approach established by the Supreme Court in

---

[9] A recent Seventh Circuit Court of Appeals case has cited the First Amendment retaliation standard as it existed before the U.S. Supreme Court decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S.Ct. 2343 (2009). *See Gomez v. Randle*, No. 11-2962, 2012 WL 1660975, 6 (7th Cir. 2012) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) for the legal standard that the plaintiff's protected activity must be "at least a motivating factor" for the defendant's actions). Several Seventh Circuit cases have recognized that the motivating factor does not survive *Gross v. FBL Financial Services, Inc*. *See, e.g., Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 501 (7th Cir. 2010); *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961 (7th Cir. 2010); *Fairley v. Andrews*, 578 F.3d 518, 525–26 (7th Cir. 2009). The Seventh Circuit has addressed the tension between the motivating factor and but-for causation tests in two 2011 cases. *See, e.g., Surita v. Hyde,* 665 F.3d 860, 874 (7th Cir. 2011); *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011). The undersigned recognizes that the *Gomez* court may have just been stating what is required by the plaintiff in order to state a First Amendment retaliation claim and will proceed with the presumption that the but-for test is applicable at the summary stage of litigation. *See Surita,* 665 F.3d at 874.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Johnson*, 70 F.3d at 477 (citing *King v. Board of Regents*, 898 F.2d 533, 537 (7th Cir. 1990). Under the burden-shifting approach, "the burden of proof relating to causation is divided between the parties in First Amendment tort cases." *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). "To make a prima facie showing of causation the plaintiff must show only that the defendant's conduct was a sufficient condition of the plaintiff's injury." *Id*. "The defendant can rebut, but only by showing that his conduct was not a necessary condition of the harm—the harm would have occurred anyway." *Id*.

Hall has complained that he was excluded from Jumu'ah services because he had filed grievances against defendant Love regarding Ramadan (a sufficient condition). Defendant Love has rebutted Hall's retaliation assertion by arguing that Hall would have been excluded from Jumu'ah services regardless of the grievances (not a necessary condition) because Hall was actually excluded for disciplinary reasons. *See* Doc. 27 at 13. Defendant Love offers Hall's statements made in his deposition as support:

> Q. And so it's your belief then that he removed from the [Jumu'ah services] participation list because of [refusal to sit on the floor] incident, right?
> A. Yes.
> …
> A. ... I will point out you asked me if I believe that Chaplain Love took me off the Jumu'ah list because of the incident that happened on [December 5, 2008], and I'm saying yes, because of something in particular. The Ramadan incident that happened in September, I wrote a grievance about it. I wrote several grievances about it. And they sent a grievance to Chaplain Love on [December 4, 2008], which was the Thursday before Jumu'ah, and after he responded to it, or whatever, I guess he was made aware of the situation. So Friday when I came in, he interrupted the service and started talking about chairs. But what Chaplain Love didn't know is that I sit in chairs for medical reasons, and besides it's not mandatory for us to sit on the floor anyway. That's a custom that was traditionally passed down. And once I got that, all of the grievances, and I started going over them, I seen that he received the grievance on [December 4, 2008]. So that was just an assumption that came to mind because I was wondering why he would interrupt service because he hadn't never done nothing like that before. So

> that's why I believe that I was taken off the Jumu'ah list, and plus there was never any … incident reports written [regarding the chair incident].

Doc. 27-1 at 33-36. Hall's deposition statements do not provide conclusive proof that Hall would have been excluded from Jumu'ah services regardless of his protected activity. The statements indicate that Hall believes that defendant Love's reasons for excluding him were pretextual. The fact that an incident or disciplinary report was not made with respect to Hall's conduct also works against defendant Love's argument. In addition, defendant Love has not provided any sworn evidence of his own explaining the reasons for his decision to exclude Hall from the Jumu'ah services. This issue will ultimately need to be resolved by making credibility assessments, and as the Court stated above, the summary judgment phase is not the proper time to make such assessments. *See Anderson,* 477 U.S. at 255. Accordingly, a genuine issue of material fact exists as to whether Hall's protected activity was a "but-for" cause of defendant Love's adverse action in excluding Hall from Jumu'ah services, and summary judgment for defendant Love on Count 2 should be denied.

### C. Qualified Immunity

Finally, the parties disagree as to whether the defendants are entitled to qualified immunity in this case. In order to defeat the defense of qualified immunity, Hall will need to demonstrate "(1) that the defendants conduct violated his constitutional rights, and (2) that the violated right was clearly established at the time of the alleged misconduct." *Lewis v. Downey*, 581 F.3d 467, 478 (7th Cir. 2009) (citing *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Payne v. Pauley*, 337 F.3d 767, 775 (7th Cir. 2003)). Here, the Court has already determined that genuine issues of material exist for trial as to whether the defendants violated

Hall's constitutional rights on the remaining claims in this lawsuit. Thus, the Court will proceed to the second part of the inquiry. *See id.* (citing *Hill v. Shelander*, 992 F.2d 714, 717-18 (7th Cir. 1993)).

The second part of the qualified immunity inquiry is a question of law. *See id.* (citing *Marshall v. Allen*, 984 F.2d 787, 793 (7th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985))). In order to defeat this part of the inquiry, the right that was allegedly violated must be clearly established "in a particularized sense." *See id*. (quotations and citations omitted). The complete question is "whether, operating under the state of the law as it existed at the time of relevant events, a reasonable officer would have known that the particular action at issue was unlawful." *See id*. at 479 (citing *Juriss v. McGowan*, 957 F.2d 345, 350 (7th Cir.1992); *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (stating that the contours of a constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right" (quotations omitted)); *Hill*, 992 F.2d at 718).

The defendants argue that they are entitled to qualified immunity on all counts under the second part of the inquiry because "if they were to be held liable on the facts alleged, it would constitute a heightened standard for what is needed to show a violation of the First Amendment and prove retaliation." Doc. 27 at 14. The Court does not agree. As the facts are construed for purposes of summary judgment, a reasonable official would have known that acting with a pre-text in order to intentionally exclude a person from observance of certain aspects of the practice of his or her religion would violate the rights of the person so excluded. *See Koger*, 523 F.3d at 802 ("prohibition against substantially burdening sincerely held religious beliefs is well-established in Free Exercise Clause" (citation omitted)); *see also Babcock v White,* 102 F.3d 267,

276 (7th Cir 1996) ("… retaliation against constitutionally protected conduct is actionable regardless of whether the defendant's actions independently violate the constitution. A prison official in [the defendant's] position therefore would have been on notice that any retaliation, whatever its shape, could give rise to liability."). Perhaps these facts will be construed in a different light at trial. The defendants may raise the qualified immunity argument again at that time. For now, the defendants are not entitled to qualified immunity, and the (Doc. 26) motion for summary judgment should be denied.

## IV.  RECOMMENDATION

It is recommended that the defendants' (Doc. 26) motion for summary judgment be denied.

**SO RECOMMENDED.**

**DATED: June 27, 2012.**

*/s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE
